**Richard CARROLL et al., Plaintiffs,**

v.

**PROTECTION MARITIME INSUR-
ANCE CO., LTD., et al.,
Defendants.**

Civ. A. No. 71–2669–J.

United States District Court,
D. Massachusetts.

July 11, 1974.

Robt. S. Wolfe of Kaplan, Latti & Flannery, Boston, Mass., for plaintiffs.

Blair L. Perry of Hale & Dorr, Boston, Mass., for defendant Protection Maritime.

Solomon Sandler, Gloucester, Mass., for defendants Trans-Atlantic Marine, Inc. and Ernest Enos.

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS FURTHER AMENDED COMPLAINT

JULIAN, Senior District Judge.

This case is before the Court on "Defendants' Motion to Dismiss the Plaintiffs' Further Amended Complaint or For Other Relief in the Alternative." The motion asserts this Court lacks jurisdiction over the subject matter and that the complaint fails to state a claim upon which relief can be granted. F.R. Civ.P. 12(b)(1), (6). Oral argument has been waived and the motion has been submitted on briefs.

The fifty-one-page complaint can be summarized as follows. The plaintiffs are seamen and commercial fishermen. The defendant Protection Maritime Insurance Co., Ltd., is an insurance company which issues maritime protection and indemnity insurance to owners of fishing vessels. The defendant Trans-Atlantic Marine, Inc., is Protection Maritime's agent in New England and is authorized to sell marine protection and indemnity insurance and adjust claims under the policies which issue. The defendant Ernest Enos is an officer, director and shareholder of Protection Maritime; he also is president and treasurer of Trans-Atlantic. He "stands in the position of agent for and marine manager of" Protection Maritime. Mr. Enos has authority to sell insurance and to adjust claims under policies which issue.

In Count 1, ten of the twenty-five named plaintiffs allege a tort action for intentional interference with advantageous business relationships and intentional interference with contractual rights against Protection Maritime. In Count 2, the same plaintiffs allege a similar cause of action against Trans-Atlantic, and in Count 3 they allege a similar cause of action against Enos. Count 1 is typical. Count 1 alleges that after the plaintiffs sustained work-related injuries and recovered therefor, Protection Maritime, knowing of plaintiffs' employment status, notified the owners of assured vessels that coverage would, in plaintiffs' words, "not extend" to the plaintiffs. Since marine insurance is necessary to operate a fishing vessel and is not readily available elsewhere, the vessel owners were compelled to discharge or to refuse to rehire these plaintiffs. Protection Maritime knew that this denial of employment would occur.

In Counts 4, 5 and 6, twenty-three of the twenty-five plaintiffs allege tort actions based on intentional interference with advantageous business relationships and intentional interference with contractual rights. Count 4 alleges a cause of action against Protection Maritime, Count 5 alleges a similar cause of action against Trans-Atlantic, and Count 6 alleges a similar cause of action against Enos. Count 4 is typical of these three counts: after these plaintiffs suffered work-related injuries and recovered therefor, Protection Maritime, with knowledge of the plaintiffs' employment status, notified the owners of assured vessels that insurance rates would vary according to the identity of the fishermen employed on the vessels. Employment of any of the twenty-three plaintiffs would precipitate, in plaintiffs' words, "inordinately increased" premium cost. The necessity of marine insurance and the premium costs effec-

tively prohibited employment of the plaintiffs by the owners of fishing vessels.

In Counts 7, 8 and 9, the same plaintiffs who complained in Counts 1, 2 and 3 allege that the refusal to "extend" coverage to them, as outlined above in the discussion of Counts 1, 2 and 3, resulted from a conspiracy among the defendants and owners of insured fishing vessels to reduce the volume of judicially processed insurance claims and reduce the price of marine insurance in order to monopolize and restrain trade in the marine protection and indemnity insurance industry. In furtherance of the defendants' attempted monopolization and restraints, the defendants and the owners of insured vessels "have conspired to cause, and through threats, intimidation and economic coercion, of other vessel owners and the plaintiffs . . . have caused a secondary boycott" of the ten plaintiffs' services. See 15 U.S.C. §§ 1–7, 1011–1015 (1970). The rates set for insurance are also alleged to violate the price discrimination provisions of the Robinson-Patman Act, 15 U.S.C. § 13 (1970).

In Counts 10, 11 and 12, the twenty-three plaintiffs who complained in Counts 4, 5 and 6 allege that the activities described in Counts 4, 5 and 6 resulted from a conspiracy and attempt to monopolize and restrain trade in the marine protection and indemnity insurance industry. Secondary boycotts of the twenty-three plaintiffs' services were utilized in furtherance of the attempted monopolization and restraint. The boycotts were caused by "threats, intimidation and economic coercion." See 15 U. S.C. §§ 1–7, 1011–1015 (1970). The rates set for insurance are also alleged to violate the price discrimination provisions of the Robinson-Patman Act, 15 U.S.C. § 13 (1970).

## ADMIRALTY

Each count purports to be based, *inter alia*, upon the admiralty or maritime jurisdiction of this Court.

The plaintiffs have alleged no contractual relationship with the defendants. No issue is presented concerning any maritime contract or breach thereof. The issue is whether the plaintiffs have alleged any tort claim within the admiralty jurisdiction of this Court.

■ The historic view is that maritime tort jurisdiction extends only to torts which occur on navigable waters. Although the Second Circuit has repudiated this view in favor of a test which asks whether the injury relates to the operation of a vessel plying navigable waters, see Khedivial Line, S. A. E. v. Seafarers' Int'l Union, 278 F.2d 49, 52 (2d Cir. 1960) (dictum), the First Circuit accepts the traditional view. Fireman's Fund Am. Ins. Co. v. Boston Harbor Marina, Inc., 406 F.2d 917, 919 (1st Cir. 1969), reviewing 285 F.Supp. 36 (D.Mass.1968); see also Victory Carriers, Inc. v. Law, 404 U.S. 202, 205–206, 92 S.Ct. 418, 30 L.Ed.2d 383, n. 2 (1971). Since the complaint contains no allegation that any allegedly tortious activities occurred on navigable waters, admiralty jurisdiction is lacking. 28 U.S.C. § 1333 (1970); Fireman's Fund Am. Ins. Co. v. Boston Harbor Marina, Inc., *supra*; Clinton v. International Organization of Masters, 254 F.2d 370, 372 (9th Cir. 1958).

## ANTITRUST

Counts 7 through 12 purport to be based, *inter alia*, upon the antitrust laws of the United States. The defendants move to dismiss for failure to state a claim upon which relief can be granted under the antitrust laws. F.R.Civ.P. 12(b)(6).

■ A motion to dismiss for failure to state a claim upon which relief can be granted can properly be used to attack a plaintiff's capacity to sue. Klebanow v. New York Produce Exch., 344 F.2d 294 (2d Cir. 1965); Shaw-Henderson, Inc. v. Schneider, 335 F.Supp. 1203, 1213 (W. D.Mich.), aff'd for the reasons stated below, 453 F.2d 748 (6th Cir. 1971); Weiner v. Winters, 50 F.R.D. 306 (S.D. N.Y.1970). Therefore, the parties have

addressed plaintiffs' standing in their briefs.

Persons who suffer direct injury from an antitrust violation can obtain relief under the antitrust laws; indirect injury is insufficient to allow relief. A person "whose losses result only from an interruption or diminution of profitable relationships with the party directly affected by alleged violations of the antitrust laws" suffers indirect injury and does not have a private cause of action under the antitrust laws. Snow Crest Beverages, Inc. v. Recipe Foods, Inc., 147 F.Supp. 907, 909 (D.Mass. 1956); see Robinson v. Stanley Home Prods., Inc., 178 F.Supp. 230, 233 (D. Mass.), aff'd, 272 F.2d 601 (1st Cir. 1959); 15 U.S.C. § 15 (1970). Consequently, when a plaintiff's alleged injury derives solely from his status as an employee of one who has been injured by antitrust violations, the plaintiff's injury is indirect, and he does not have a private cause of action under the antitrust laws. Reibert v. Atlantic Richfield Co., 471 F.2d 727, 732–733 (10th Cir.), cert. denied, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973); Martens v. Barrett, 245 F.2d 844 (5th Cir. 1957) (each plaintiff held stock in, and was employed by, the corporation); Deaktor v. Fox Grocery Co., 332 F.Supp. 536, 541 (W. D.Pa.1971), aff'd, 475 F.2d 1112, 1115 (3d Cir.), cert. denied, 414 U.S. 867, 94 S.Ct. 65, 38 L.Ed.2d 86 (1973); Centanni v. T. Smith & Son, Inc., 216 F.Supp. 330, 338 (E.D.La.), aff'd per curiam, 323 F.2d 363 (5th Cir. 1963); Corey v. Boston Ice Co., 207 F. 465 (D.Mass. 1913); see Robinson v. Stanley Home Prods., Inc., 178 F.Supp. 230 (D.Mass.), aff'd, 272 F.2d 601 (1st Cir. 1959); 15 U.S.C. § 15 (1970); see also Snow Crest

Beverages, Inc. v. Recipe Foods, Inc., 147 F.Supp. 907, 909 (D.Mass.1956) (partial discussion of policy served by rule requiring direct injury).

The defendants allegedly are attempting to monopolize and restrain the marine protection and indemnity insurance industry. The plaintiffs are not in the marine protection and indemnity insurance business nor are they purchasers of marine protection and indemnity insurance. The purchasers are vessel owners. The plaintiffs are seamen and commercial fishermen formerly employed by some of the vessel owners.[1] Even if the plaintiffs have in fact suffered as a result of antitrust violations by the defendants, their interest as employees of the vessel owners is too remote and their injury is too indirect to be actionable under the antitrust laws. 15 U.S.C. § 15 (1970). The plaintiffs lack standing to assert that the defendants' actions violate the antitrust laws.[2] Therefore, plaintiffs have failed to state a claim upon which relief can be granted under the antitrust laws. F.R.Civ.P. 12(b)(6).

## FEDERAL QUESTION

Plaintiffs claim that this Court has jurisdiction over Counts 7 through 12 by virtue of 28 U.S.C. § 1331.

28 U.S.C.A. § 1331 provides, in part, that the

"district courts shall have original jurisdiction of all civil actions wherein the matter in controversy . . . arises under the Constitution, laws, or treaties of the United States."

Plaintiffs assert that "the defendants have prevented and continue to prevent the plaintiffs from exercising their

---

1. Plaintiffs allege that at all times they performed their work in a workmanlike manner and that their employers were satisfied with their work and desired to continue to employ them. Plaintiffs' Further Amended Complaint Count 1, ¶ 3, incorporated by reference into Count 7, ¶ 4; Count 8, ¶ 7; Count 9, ¶ 5; Count 10, ¶ 13; Count 11, ¶ 13; Count 12, ¶ 13. *Id.*, Count 1, ¶ 15, incorporated by reference into Count 7, ¶ 4;

Count 8, ¶ 7; Count 9, ¶ 6. *Id.*, Count 10, ¶ 6; Count 11, ¶ 6; Count 12, ¶ 6.

2. Since the Court rules that plaintiffs lack standing to assert a cause of action under the antitrust laws, the defendants' contention that their actions are exempt from the antitrust laws is not reached and no opinion is expressed thereon.

rights under the Merchant Marine Act of 1920, 46 U.S.C. § 688 (1964), and the General Maritime Law." "Memorandum of Plaintiffs in Support of Opposition to Defendants' Motion to Dismiss Plaintiffs' Further Amended Complaint" at 15. The plaintiffs contend that under Richardson v. St. Charles-St. John the Baptist B & F Auth., 274 F.Supp. 764 (E.D.La.1967), the alleged conduct of the defendants is sufficient to confer federal question jurisdiction on this Court. The *Richardson* case noted that a Jones Act claim may be prosecuted in admiralty where a jurisdictional amount is not required and held that a law action on a Jones Act claim arises under an Act of Congress regulating commerce and can be maintained under 28 U.S.C. § 1337 which, in contrast to 28 U.S.C. § 1331, does not require a jurisdictional amount in controversy. The *Richardson* case is not in point. The present suit does not involve a claim arising under the Jones Act. No claim within the federal question jurisdiction of this Court has been alleged.

## DIVERSITY

 Counts 1, 4, 7 and 10 purport to be based, *inter alia*, upon diversity jurisdiction. 28 U.S.C. § 1332 (1970). The citizenship of Protection Maritime Insurance Co., Ltd., the defendant in Counts 1, 4, 7 and 10, is allegedly diverse to that of the plaintiffs. However, the defendants in the other counts are alleged to be citizens of the same state as plaintiffs. The general rule is that the federal district court has jurisdiction under 28 U.S.C. § 1332 only if all defendants are of citizenship diverse to that of the plaintiff. Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435 (1806); Barker v. Lein, 366 F.2d 757, 758 (1st Cir. 1966); Charles Dowd Box Co. v. Fireman's Fund Ins. Co., 303 F.2d 57, 59 (1st Cir. 1962). However, if an

independent basis of federal jurisdiction over the non-diverse defendants exists, dismissal of the claims against the diverse defendant is not proper. Romero v. International Terminal Operating Co., 358 U.S. 354, 381, 79 S.Ct. 468, 3 L.Ed. 2d 368 (1959). In the present case, no independent basis[3] of jurisdiction exists over the non-diverse defendants. Therefore, the general rule is applicable. Since two of the defendants are citizens of the same state as plaintiffs, diversity jurisdiction is lacking.

This suit is not within the admiralty, diversity or federal question jurisdiction of this Court.[4] Plaintiffs have failed to state a claim upon which relief can be granted under the antitrust laws. Therefore, "Defendants' Motion to Dismiss the Plaintiffs' Further Amended Complaint" is granted and the "Plaintiffs' Further Amended Complaint" is dismissed.

---

3. It would be circular to argue that ancillary or pendent jurisdiction provides an independent basis for jurisdiction in this case.

4. Counts 2, 3, 5, 6, 8, 9, 11 and 12 also purport to be based upon ancillary or ancillary

and pendent jurisdiction. This Court will not retain ancillary or pendent jurisdiction over any claim based upon state law which is set forth in the complaint.